IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JOSHUA RYAN BREWER,                                    Case No. 13-cv-00541-CL

               Plaintiff;

                                                 ORDER

      v.

CITY OF MEDFORD, MEDFORD POLICE
DEPARTMENT, MAYOR GARY
WHEELER, OFFICER IAN MCDONALD,
SGT. BEN LYTLE, LT. BRETT JOHNSON,
CHIEF OF POLICE RANDY SCHOEN,
DEPUTY CHIEF TIM DONEY, and CHIEF
TIM GEORGE;

               Defendants.

---

CLARKE, Magistrate Judge.

      Plaintiff Joshua Brewer ("Brewer") brings this action against the City of Medford (the

"City), the Medford Police Department (the "Department"), Mayor Gary Wheeler ("Wheeler"),

Officer Ian McDonald ("McDonald"), Sergeant Ben Lytle ("Lytle"), Lieutenant Brett Johnson

("Johnson"), Chief Randy Schoen ("Schoen"), Deputy Chief Tim Doney ("Doney") and Chief

Tim George ("George) (collectively, the "Defendants"). Brewer alleges Defendants conspired to

violate his civil rights; initiated a malicious prosecution against him; and conducted an unlawful search, seizure, and arrest. Brewer raises claims of supervisor and government liability under 42 U.S.C. § 1983. He further alleges the following pendant state claims: malicious prosecution; unlawful search, seizure, and arrest; and intentional infliction of emotional distress (IIED).

Currently before the court are Defendants' two partial motions for summary judgment. The parties executed written consent to entry of judgment by a United States Magistrate Judge (#54). For the reasons stated below, Defendants' first motion (#26) is GRANTED and Defendants' second motion (#39) is GRANTED in part and DENIED in part.

## PRELIMINARY MATTER

The court addresses the following issue before reaching the merits of Defendants' motions.

### I.   Defendants' Motion to Strike

Brewer offers a report drafted by Carl Worden, identified as an "investigator," in opposition to Defendants' second motion for summary judgment. (Glass Decl. Ex. 3). Defendants move to strike the report in its entirety, contending it is inadmissible hearsay.

It is well settled that a trial court can consider only admissible evidence when ruling on a motion for summary judgment. Beyene v. Coleman Sec. Services, Inc., 854 F.2d 1179, 1181 (9th Cir. 1988). Authentication is a condition precedent to admissibility. Id. at 1182 (citing Fed. R. Evid. 901(a)). To properly authenticate a piece of evidence, its proponent must lay a foundation to support a finding that the document is what the proponent claims it to be. Id.

Brewer has not laid an adequate foundation for the Worden report. The report purports to be a "Timeline of Events and Identity of Most of the Individuals Responsible for the False Arrest, False Imprisonment and Wrongful Conviction of Joshua Brewer." (Glass Decl. Ex. 3, at

2). It consists of eight typed pages with the name "Carl F. Worden" typed at the bottom of the final page. (Glass Decl. Ex. 3, at 9). Brewer introduces the report through the declaration of his counsel, who calls it a "true copy of Investigator Carl Worden's report." (Glass Decl., at 2). However, as the Ninth Circuit made clear in United States v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970):

> A writing is not authenticated simply by attaching it to an affidavit, even if the writing appears on its face to have originated from some governmental agency and the affiant is a government official. The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery.

The report and declaration clearly do not meet this standard.

Even if the report had been properly authenticated, the court could not consider it. The report is hearsay: an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). "[H]earsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804 or 807." Orr v. Bank of Am., NT & SA, 285 F.3d 764, 778 (9th Cir. 2002). Brewer has not attempted to establish that the report falls under any of these Rules' protection. For these reasons, the court will not consider Worden's report when ruling on Defendants' motions.

## BACKGROUND

No admissible evidence has been presented to dispute the following facts.

In the early morning of September 27, 2009, police responded to reports of gunfire near Brewer's residence. (Glass Decl. Ex. 4, at 8). Two days prior, police had served a search warrant on the home and arrested Brewer's cousin and roommate, Dustin Freeman ("Freeman"). (Glass Decl. Ex. 4, at 13-14, 17; Glass Decl. Ex. 2, at 6). Consequently, they knew Brewer

resided there and that marijuana was grown therein. (Glass Decl. Ex. 4, at 12-14, 22). Brewer consented to the officers' request to search the home. (Glass Decl. Ex. 4, at 23-24).

Brewer and Freeman were both registered medical marijuana users. (Glass Decl. Ex. 2, at 6; Second Mitton Decl. Ex. 2). Freeman had a permit to grow marijuana at the residence for both himself and Brewer. (Glass Decl. Ex. 2, at 6; Second Mitton Decl. Ex. 2). Together, the two could legally possess up to 48 ounces of "usable marijuana" — defined as dried leaves and flowers; not seeds, stalks or roots. (Glass Decl. Ex. 2, at 5-6). Officers removed 41.9 ounces of "useable marijuana" from the home — 6.1 ounces less than the permissible limit under the Oregon Medical Marijuana Act ("OMMA") — and 42.65 ounces of marijuana which officers did not classify as useable or non-useable. (Glass Decl. Ex. 2, at 6). Officers also seized a revolver. (Glass Decl. Ex. 4, at 39).

Officers arrested Brewer. (Second Lytle Decl., at 1). There were four dogs present in the home at the time of Brewer's arrest. (Second Lytle Decl., at 1). The officers transported the dogs to Jackson County for safekeeping while Brewer was in custody. (Second Lytle Decl., at 2). While there, one of the dogs was euthanized. (Second Lytle Decl., at 2).

Brewer was charged with five crimes: three related to the gunfire and two related to the marijuana. (Mitton Decl. Ex. 1, at 1). On May 3, 2010, Sgt. Lytle sent Brewer a letter to document a phone conversation they had earlier that day. (Lytle Decl. Ex. 1). In it, Lytle forbid Brewer from contacting any other City officials regarding his arrest and advised him that he could be arrested and face additional criminal charges if he did not comply. (Lytle Decl. Ex. 1). Around the same time, Lt. Johnson left a voice message for Brewer, instructing him to direct all communications with the City through Lytle or himself. (Johnson Decl. ¶ 2).

On June 2, 2010, the three gunfire charges were dismissed. (Mitton Decl. Ex. 1, at 1). On October 4, 2010, Brewer was convicted of unlawful possession and manufacture of marijuana. (Mitton Decl. Ex. 1 at 1). At the trial, Brewer's counsel offered three OMMA registration cards associated with Brewer's address as exhibits. (Second Mitton Decl. ¶ 5; Second Mitton Decl. Ex. 2). On March 28, 2012, the Oregon Court of Appeals overturned Brewer's conviction for failure to prove Brewer had an illegal quantity of drugs under the OMMA. (Glass Decl. Ex. 1).

## STANDARD

Summary judgment is appropriate if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party fulfills its burden, the burden shifts to the non-moving party who must go beyond the pleadings to identify genuine issues of fact. Celotex Corp., 477 U.S. at 324. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Fed. R. Civ. P. 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

The court must view the evidence in the light most favorable to the nonmoving party. Szajer v. City of Los Angeles, 632 F.3d 607, 610 (9th Cir. 2011). All reasonable doubt as to the existence of a genuine dispute of material fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Life Ins. Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981). However, facts must be "viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

### I.    Defendants' First Motion for Partial Summary Judgment

#### A.  Statute of Limitations

Brewer's § 1983 claims are governed by Oregon's two-year personal injury statute of limitations. Wallace v. Kato, 549 U.S. 384, 387 (2007); Or. Rev. Stat. § 12.110(1). His pendant state law claims are similarly limited to a two year window. Or. Rev. Stat. § 12.110(1); Brackhahn v. Nordling, 269 Or. 667, 669 (1974) ("[t]he statute of limitations for both false arrest and malicious prosecution is two years."); Evans v. Salem Hosp., 83 Or. App. 23, 27 (1986) (discussing two year statute of limitations for emotional distress claims).

Defendants argue, and Brewer concedes, that all claims based on the firearms charges are not timely. Regardless of whether the claims run from Brewer's arrest in 2009 or their dismissal in 2010, the two year window had closed by the time Brewer filed this case in 2013. Similarly, Brewer's claims related to his post-arrest communications with the City are time-barred. The

events relevant to the claims — the May 2010 letter and associated voice message — occurred more than two years before this suit was filed. In addition, as concede by Brewer, all allegedly offensive actions giving rise to the IIED claim occurred outside of the statute of limitations. The most recent event — Brewer's 2010 conviction — occurred more than two years prior to Brewer's filing of this action. Accordingly, the court grants Defendants' motion from summary judgment on the claims arising out of the firearms search, seizure, and arrest; Brewer's claims related to restrictions on his communications; and Brewer's IIED claim. Despite these claims' dismissal, the parties may proceed with discovery of their factual bases to the extent they relate to Brewer's remaining claims.

### B.  Claim for Return of Revolver

On May 25, 2006, Brewer was convicted of the fourth-degree assault of Nancy Brewer, a Class A misdemeanor labeled with the suffix "DV" to indicate domestic violence. (Mitton Decl. Ex. 2). On the basis of this conviction, Defendants move against Brewer's claim for the return of his Taurus revolver or the value thereof. Defendants argue Brewer has no legal claim to the revolver because federal law prohibits anyone convicted of a domestic violence misdemeanor from possessing a firearm that "has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(9).

Brewer presents no evidence to dispute Defendants' assertion that it would be illegal for him to possess the revolver. Accordingly, in the absence of any genuine factual issue, the court grants Defendants' motion for summary judgment on Brewer's claim to the gun.

## II.   Defendants' Second Motion for Partial Summary Judgment

### A. Marijuana Claims

On February 4, 2014, this court sanctioned (#31) Brewer for failing to comply with a court order (#22, #23) to reply to Defendants' interrogatories.  The sanction prohibited Brewer from calling witnesses or providing testimony "relating to the interrogatories which he has failed to answer." One such interrogatory asked Brewer to:

> Name all people whose OMMA cards were used for purposes of growing marijuana at the house in question at any time from January 1, 2009 to September 27, 2009.  Include the name, phone number, and current address of each such individual, as well as the type of card (*i.e.*, patient or caregiver).

Defendants assert this sanction bars Brewer from presenting evidence that any of the marijuana seized from his home was legally grown in compliance with the OMMA. Accordingly, Defendants argue Brewer cannot dispute whether they had probable cause to take action against him and thus cannot move forward with his marijuana-related claims.

Brewer responds that this result is unduly harsh.  We agree.  Regardless of the interrogatories, both parties have access to the three OMMA cards submitted as exhibits in Brewer's criminal trial.  At the summary judgment motion hearing (#53), Defendants conceded they would not be prejudiced by the introduction of these cards.  As such, we clarify that the sanction (#31) does not preclude Brewer from presenting evidence related to the OMMA cards previously introduced at his criminal trial.

Even with the three cards, Defendants argue Brewer cannot establish the legality of the marijuana grow.  Taken alone, Brewer's OMMA card is insufficient to justify the quantity of marijuana found in the home.  Defendants assert Brewer cannot rely on the other two OMMA cards associated with the residence because they were issued in Freeman's name and Freeman

was already in police custody at the time of Brewer's arrest. Because "Freeman was not a resident" of the home on the night in question but rather a resident of the jail, Defendants argue Brewer cannot invoke Freeman's cards. (Def.s' Reply in Supp. of Second Mot. for Summ. J., at 3).

Defendants offer no evidence to suggest Freeman's OMMA cards or the grow site's registration were invalid on the date of Brewer's arrest. They do not cite any OMMA provisions requiring a cardholder to be present or reside at a grow site. Nor do they present any legal authority for the proposition that a detained person's residence is his jail cell rather than his home. Contra Cohen v. U.S., 297 F.2d 760, 774 (9th Cir. 1962) ("One does not change his residence to the prison by virtue of being incarcerated there."). Accordingly, the fact that Freeman was not present at the home on the night in question does not dispel the parties' dispute as to whether Defendants had probable cause to arrest and prosecute Brewer for the marijuana charges. Genuine issues of material fact remain.

### B. Claim Related to Brewer's Deceased Dog

Defendants argue they are not the proper parties to Brewer's claim regarding his deceased dog because they had no involvement in Jackson County's decision to euthanize the animal. In support of this contention, Defendants provide a declaration signed by Sgt. Lytle stating that he and the other officers transported the dogs to Jackson County for safekeeping because they "could not leave the dogs unattended at the house," and that Jackson County acted independently when it put one of the dogs down. (Second Lytle Decl.).

In response, Brewer argues there is a genuine issue of material fact as to whether Defendants should have transported the dog to Jackson County in the first place and thus whether Defendants were a but-for cause of the animal's death. Brewer speculates that Brewer's

wife could have cared for the animals.  However, Brewer fails to offer any factual support, as required by Fed. R. Civ. P. 56, to show the wife was able to do so or to demonstrate the officers were aware she would look after the dogs in Brewer's absence.  Brewer cannot rest upon these conclusory allegations to withstand Defendants' motion for summary judgment.  See Devereaux, 263 F.3d at 1076.  Defendants established the absence of a triable issue of fact — providing evidence they acted to ensure the animals received care while Brewer was away and had no involvement in the dog's subsequent death — and Brewer has not produced any evidence in opposition.  Therefore, summary judgment is appropriate.

## ORDER

For the reasons stated above, the Defendants' first partial motion for summary judgment (#26) is GRANTED.  Defendants' second partial motion for summary judgment (#39) is GRANTED as to Brewer's claim regarding his deceased dog and DENIED as to his marijuana-related claims.

It is so ORDERED and DATED this _____ day of July 2014.

_____
MARK D. CLARKE
United States Magistrate Judge